IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>      Plaintiff,<br><br>  v.<br><br>KEN SALAZAR, Secretary, DEPARTMENT OF THE INTERIOR, an agency of the United States, and BUREAU OF LAND MANAGEMENT,<br><br>      Defendants. | Case No.  4: 08-CV-435-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to reconsider filed by Simplot and a motion to vacate and remand filed by WWP. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny the motion to reconsider, and will grant in part the motion to vacate and remand. The Court will remand the cases to the BLM for further proceedings consistent with this decision but will not vacate the grazing decisions.

## ANALYSIS

**Motion to Reconsider**

WWP brought this case to challenge some 600 BLM decisions that allegedly failed to protect the sage grouse. To render the case more manageable, the parties selected five test cases – five decisions by the BLM to renew grazing permits on certain allotments – to resolve on summary judgment. After hearing argument, the Court issued a decision

**Memorandum Decision & Order - 1**

finding that each of the five permit renewal decisions violated NEPA, FLPMA, and the FRH regulations.

Simplot now asks the Court to reconsider just a portion of that decision – the portion finding that the permit renewal for the Battle Creek allotment violated FLPMA because it failed to comply with the Bruneau Management Framework Plan (Bruneau MFP), the BLM's programmatic-level plan governing the Battle Creek allotment.  The BLM has not joined in this motion.

Simplot argues that the Court neglected to consider the BLM's updated data on the Battle Creek allotment set forth in a 2007 FRH Assessment and a 2008 EA.  The Court rejects this argument, however, because the Court did consider – and discuss – both reports at length in its original decision.  *See Memorandum Decision (Dkt. No. 171)* at pp. 23-24.

Simplot argues next that the Court failed to recognize that the permit renewal adjusted the grazing system on the allotment.  In its original decision, the Court held that the BLM violated FLPMA by failing to adjust the seasons of use on pastures 8, 9, 12, 21, and 22, despite its own findings that grazing during these periods was resulting in the failure to meet minimum growth needs for native plant communities.  *Id*. at p. 54.  Simplot argues that the BLM's failure to adjust the seasons of use was not fatal because the Bruneau MFP allows the BLM to make improvements by adjusting *either* (1) the seasons of use *or* (2) the grazing system.  Even if the BLM did not adjust the seasons of use, argues Simplot, it did adjust the grazing system on pastures 8 and 21, and so

**Memorandum Decision & Order - 2**

complied with the Bruneau MFP. The adjustments, Simplot points out, involved a change in the way cattle were rotated through the allotments and range improvements including 11 new water troughs along with miles of new pipelines and fences.

Simplot's motion is narrow in scope. It is undisputed that for pastures 9, 12, and 22, the BLM adjusted neither the seasons of use nor the grazing system, and so those pastures are not part of Simplot's motion to reconsider.

As to pastures 8 and 21, the Court's earlier decision reviewed in detail the most recent data concerning the impacts of grazing on these two pastures. *Id*. at pg. 23. That data showed, as the Court noted, that pastures 8 and 21 had lost native grasses and forbs to a large degree. *Id.* Simplot cites to nothing in the record where the BLM explains how the range improvements will work together with the rotation of grazing to improve native plant communities on pastures 8 and 21. The fact remains that grazing is permitted during critical periods of plant growth in those two pastures that suffer from a serious loss of native grasses and forbs, according to the BLM. The BLM has not joined in Simplot's motion and so does not fill in the missing gap in Simplot's argument. Accordingly, the Court will not reconsider this aspect of its decision.

Finally, Simplot challenges that portion of the Court's opinion holding that the BLM violated the Bruneau MFP by fencing springs. The Court discussed this issue at length in its prior decision. *Id* at pgs. 52-53. Certainly fencing is an option under the Bruneau MFP, but the Court explained in detail why fencing the springs – and allowing grazing in these critical sage grouse habitat areas – violated the specific provision of the

**Memorandum Decision & Order - 3**

Bruneau MFP requiring the BLM to "manage springs . . . as key wildlife habitats . . . ." *Id*. The Court will not repeat that discussion here, and finds no reason to reconsider it now.

For all of these reasons, Simplot's motion to reconsider will be denied.

## **WWP's Motion to Vacate and Remand**

WWP asks the Court to not only remand the 5 grazing decisions at issue here but also to vacate each decision. The result, WWP argues, will be to stop all grazing on these 5 allotments because under the BLM's regulations, no grazing can occur unless a valid grazing decision is in effect. The BLM and Simplot respond that WWP is essentially seeking an injunction without a showing of irreparable harm, and is asking for a remedy far broader than is necessary to correct the flaws identified by the Court.

Ordinarily, an agency decision violating the APA is invalid. *See* 5 U.S.C. § 706(2) ("[t]he reviewing court shall . . . set aside agency action . . . found to be . . . not in accordance with law"). Therefore, "vacatur of an unlawful agency rule normally accompanies a remand." *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181, 1185 (9th Cir.2004). An exception to this rule exists when equity demands. *See Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir.1995). The equitable inquiry examines (1) the consequences of invalidating or enjoining the agency action; (2) potential prejudice to those who will be affected by maintaining the status quo; (3) the magnitude of the administrative error and how extensive and substantive it was; and (4) the purposes of the substantive statute under which the agency was acting. *See Center for Biological Diversity v. U.S.*, 2005 WL 2000928 (N.D.Cal. 2005) (citations omitted).

**Memorandum Decision & Order - 4**

WWP argues that if the Court vacates the BLM's five grazing decisions, all grazing must cease on the five allotments at issue.[1]  Yet there are more narrowly tailored remedies available that would cure the flaws in the BLM's decision-making process identified by the Court.  For example, if the BLM made its grazing indicators mandatory requirements rather than discretionary suggestions, the BLM would cure one of its FRH violations.  Indeed, that is just what the BLM is doing in its 2012 grazing authorizations.  *See Jones Declaration (Dkt. No. 185-1).*  There would be no need to stop all grazing to remedy this legal violation.

With regard to the NEPA violation, it stemmed from a failure to conduct a cumulative impact analysis.  WWP brought this suit to force the BLM to do a range-wide multi-state cumulative impact analysis recognizing that sage grouse do not respect the boundaries of the BLM Regional Offices.  The BLM has embarked on just such a broad-scale assessment.  About a month after the Court issued its decision, the Fish and Wildlife Service issued its finding that listing of the sage grouse under the Endangered Species Act was warranted but precluded.  In light of that finding, the BLM announced a National Greater Sage-Grouse Planning Strategy that will evaluate 68 Resource Management Plans across the range of the sage grouse, with the goal of restoring both the numbers and the habitat of the species.  As part of this Strategy, the BLM will first complete an Idaho-Montana sub-regional EIS and RMP amendment process that will cover the 5 allotments at issue here.  This EIS would be completed, the BLM estimates, in September of 2014, and the final grazing decisions for the 5 allotments will be done about 3

---

[1] While there is some dispute over this point, the Court will assume, without deciding, that vacatur will stop all grazing on the five allotments.  This is precisely the consequence WWP seeks.  Thus, in judging whether the consequence of granting WWP's motion is equitable, it is only fair to assume that WWP will get what it wants if the motion is granted.

**Memorandum Decision & Order - 5**

years from that date, or 2017.  *See Foss Declaration (Dkt. No. 188-3).*

This is essentially the cumulative impact analysis dictated by NEPA and demanded by WWP.  To vacate the grazing decisions and enjoin grazing for the next 5 years while this review is completed would be a substantial hardship on the permit holders.  Moreover, the conditions of the allotments are not so uniform that an across-the-board injunction is mandated.  For example, although the Battle Creek allotment contains poor conditions in pastures 8 and 21, as discussed, other areas within the allotment contain healthy conditions.  As the Court observed in its earlier decision concerning the Battle Creek allotment, "[m]uch of the wet areas are in good condition: The BLM's Determination found . . . that 90% of the allotment's watershed met Standard 1[watersheds], and seventeen miles of streams were in proper functioning condition."  *See Memorandum Decision, supra* at pg. 52.  An allotment-wide injunction on grazing would not appear to be justified by this record.

Certainly the Court's decision in this case will require the BLM to make changes to the grazing authorizations going forward in all 5 allotments.  As discussed, the BLM is already making such changes in its 2012 grazing authorizations.  These allotment-by-allotment changes made by the BLM in its annual grazing authorizations to align grazing with the Court's decision will more precisely accommodate varying local conditions than an allotment-wide injunction banning all grazing.  Such a ban would sweep too broadly and impose the heavy hand of the Court on complex issues of range management.  It appears that the BLM can remedy the flaws identified in the Court's opinion without a total cessation of grazing.  For these reasons, the Court finds that equity does not favor vacatur.  The Court will remand to the BLM the grazing decisions concerning the 5 allotments at issue here for action consistent with the Court's

decisions, but will not grant that portion of WWP's motion seeking vacatur.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Simplot's motion to reconsider (docket no. 181) is DENIED.

IT IS FURTHER ORDERED, that WWP's motion to vacate and remand (docket no. 175) is GRANTED IN PART AND DENIED IN PART. To the extent the motion seeks vacatur, it is denied. To the extent it seeks remand of the 5 grazing decisions at issue here to the BLM to take action consistent with this decision it is granted.



DATED: **September 26, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge