Todd C. Tucci (ISB # 6526)
Laurence ("Laird") J. Lucas (ISB # 4733)
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
ttucci@advocateswest.org
llucas@advocateswest.org

Attorneys for Plaintiff Western Watersheds Project

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) | No. 4:08-cv-435-BLW |
| | ) | |
| Plaintiff, | ) | **REPLY BRIEF IN** |
| | ) | **SUPPORT OF PLAINTIFF'S** |
| vs. | ) | **MOTION FOR REMEDIAL** |
| | ) | **RELIEF ON PHASE ONE AND** |
| RYAN ZINKE*, Secretary, | ) | **PHASE TWO ALLOTMENTS** |
| DEPARTMENT OF THE INTERIOR, an | ) | (ECF No. 276) |
| agency of the United States, and BUREAU | ) | |
| OF LAND MANAGEMENT, | ) | |
| | ) | |
| Defendants. | ) | |

---

* Pursuant to F.R.Civ.25(d), current Interior Secretary Ryan Zinke is automatically substituted for former Secretaries Ken Salazar and Sally Jewell.

**INTRODUCTION**

Western Watersheds filed its Motion for Remedial Relief only after BLM refused – despite protracted negotiation and settlement discussions – to establish any firm deadlines for new grazing decisions and associated NEPA and FLPMA reviews on the Phase One and Phase Two allotments.  Now, for the first time, BLM responds to the Motion for Remedial Relief by advising the Court that that it will complete issuance of new grazing decisions for the Battle Creek and East Castle Creek allotments in the Bruneau Field Office ("Bruneau Allotments") by the fall of 2018, and the Rockville, Silver City and Diamond Basin allotments in the Owyhee Field Office ("Owyhee Allotments") by the fall of 2019.  *See* Defendant's Opposition to Plaintiff's Motion for Remedial Relief ("Resp. Br."), ECF No. 286, at 2.

It is regrettable that BLM would not previously commit to these deadlines, but Western Watersheds welcomes BLM's new promises and is willing to accede to BLM's timeline proposal for the Bruneau and Owyhee Allotments.  Based on BLM's repeated failure to adhere to its prior timeline representations, and changing directions from the new Trump Administration about how it will process grazing permits going forward, however, it is imperative that the Court hold BLM to its current promises by incorporating them into a court-ordered schedule for compliance.

The Court must also reject BLM's argument that it needs an additional 20 years or more to complete processing final grazing decisions and associated NEPA and FLPMA reviews of the Jim Sage allotment in the Burley Field Office.[1]  *See* Resp. Br. at 5 (stating BLM "does not expect to fully process the grazing permits in the Jim Sage allotment until **the late 2030s at the earliest**") (emphasis added).  As explained below, this unreasonable timeframe makes a mockery

---

[1] BLM advises that the Jim Sage allotment is now an "amalgamation of four prior allotments, including the Jim Sage, Cassia Creek, Chokecherry, and Almo Womack allotments."  *See* Resp. Br., p. 3, n.2; Declaration of Scott Sayer, p. 2 (ECF No. 286-6).  These were addressed together in the Phase II SJ Decision, and are referred to together here as the "Jim Sage allotment."

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF --                                                                  1

of BLM's legal violations as adjudicated by the Court, and disregards its obligations under the Fundamentals of Rangeland Health ("FRH") regulations and recent Idaho Sage-Grouse Plan Amendments. Moreover, BLM errs in again misreading its discretion under Section 3023 of the 2015 National Defense Authorization Act, P.L. 113-291 ("2015 NDAA"), which does not waive FLPMA or the FRH regulations, or somehow handcuff this Court in designing appropriate equitable relief, as BLM argues.

Accordingly, the Court should grant the Motion for Remedial Relief, and issue an order requiring BLM to issue new final grazing decisions and associated NEPA and FLPMA reviews on the Bruneau Allotments by December 1, 2018, and on the Owyhee Allotments by December 1, 2019, as proposed by BLM; and establish a firm deadline for new grazing decisions to be issued on the Jim Sage allotment by March 1, 2019, as Western Watersheds originally requested.

## ARGUMENT

### I. THE COURT SHOULD ADOPT BLM'S PROPOSED SCHEDULE ON THE OWYHEE AND BRUNEAU ALLOTMENTS AS A COURT ORDER.

Western Watersheds and BLM now have no dispute over the timeframe for BLM to remedy the adjudicated violations of FLPMA, NEPA and the Fundamentals of Rangeland Health on the Bruneau and Owyhee Allotments. The parties now agree that BLM should issue new final grazing decisions and associated NEPA and FLPMA reviews on the Bruneau and Owyhee allotments by December 2018 and December 2019, respectively. Resp. Br. at 2.[2]

---

[2] For its part, Intervenor Public Lands Council (PLC) advocates for a more extended timeframe of two years after Secretary Zinke completes pending modifications to the 2015 sage-grouse plans. *See* PLC Response at p. 3, ECF No. 284. Since BLM is prepared to comply more swiftly, however, there is no reason to adopt PLC's longer proposal, particularly since it is still unknown what changes will be made to the sage-grouse plans or when they will be completed. *See* Joint Status Report, *WWP v. MacGregor*, No. 1:16-cv-083-BLW (D. Idaho 2/22/18) (ECF No. 105) (noting that Interior Dept. has published notice of intent to amend sage-grouse plans but has not determined how to proceed with the amendments yet).

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF -- 2

Based on BLM's past history of non-compliance with prior proposed timeframes, as well as changing direction from the Zinke Interior Department on how BLM should process grazing permits, however, the Court should ensure that BLM adheres to its proposed timeframe by incorporating it in a court-ordered schedule.

As discussed in detail in Western Watersheds' opening brief, ECF No. 276-1, at 12-14 ("Open. Br."), there is no doubt that the Court has broad discretion to adopt a schedule of compliance for BLM to remedy the legal violations it found. BLM acknowledges that "a court has discretionary authority to impose a deadline for remand proceedings," and suggests only that in some circumstances "a court should defer to the agency's determination of how long it will take to complete the remanded action." Resp. Br. at 6. That is not an issue, as Western Watersheds is willing to accept BLM's timeframes on the Bruneau and Owyhee Allotments.

However, BLM's inability to meet even modest timeframes for compliance here underscores that a court-ordered schedule is necessary to ensure that BLM lives up to its promises and the Court's Phase One SJ Decision. As previously established, BLM issued a proposed grazing decision in March 2013 on the Bruneau Allotments, only to abandon it in the face of opposition from Simplot and others. *See* Declaration of Todd C. Tucci, ¶ 2, and Exhs. 1, 2, 3 (ECF Nos. 276-2 to 276-5). BLM then restarted its planning efforts on the Bruneau Allotments in February 2016, only to see this compliance schedule come and go without BLM issuing any final grazing decisions or associated environmental analysis. *Compare* ECF No. 276-5, Exh. 4 (BLM project schedule for new decision and analysis on the Bruneau Allotments), and ECF No. 272-4, p. 4 (noting BLM has issued no grazing decision or environmental review).

The need for a court-ordered schedule adopting BLM's proposed timeframes is also underscored by the fact that BLM is not publicly reporting that it will issue new grazing

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF --                                                                  3

decisions and environmental analysis on the Owyhee Allotments by the "fall of 2019," as it claims now.  Resp. Br. at 2.  BLM's NEPA log for the Owyhee Field Office does not list any planned environmental review or analysis relating to renewing or modifying these grazing permits for fiscal years 2018-2019.  *See* Open. Br., at n. 4 (providing sequential steps to check BLM's NEPA log). Along with the changed directions on BLM grazing permit processing now emanating from Washington, D.C., discussed below, this apparent lack of commitment to ensuring that BLM meet its proposed timetable for the Bruneau and Owyhee allotments justifies the Court adopting that timetable in a court-ordered schedule.

In summary, Western Watersheds has waited six years now for BLM to comply with the 2012 Phase One SJ Decision requiring new grazing decisions for the Bruneau and Owyhee Allotments.  In light of the long delay in curing BLM's violations of law, the Court should adopt BLM's compliance timeframe as a court-ordered schedule requiring BLM to issue new final grazing decisions and NEPA and FLPMA analyses by December 1, 2018 for the Bruneau Allotments, and December 1, 2019 for the Owyhee Allotments.

**II. THE COURT SHOULD REJECT BLM'S PROPOSED 25-YEAR COMPLIANCE TIMEFRAME ON THE JIM SAGE ALLOTMENT.**

Western Watersheds' motion also proposed requiring BLM to remedy its Phase Two violations on the Jim Sage allotment by issuing new grazing decisions and associated environmental reviews no later than March 1, 2019.  In response, BLM argues that it needs until "late 2030s at the earliest" to comply with its legal obligations.  Resp. Br. at 5.  According to BLM, the Court should not impose any compliance schedule because BLM has been "working diligently" to remedy the legal violations and has prioritized other allotments for review above the Jim Sage Allotment.  *Id.*

Contrary to BLM's arguments, the Court should not countenance this extended delay in

remedying the Phase Two adjudicated violations of FLPMA, NEPA and the FRH regulations on the Jim Sage allotment. Without some alternative reasonable date for compliance, the Court should thus impose the March 1, 2019 date suggested by Western Watersheds.

### A. BLM's Proposed 25-Year Timeframe Lacks Any Legal Support.

BLM argues that its extended delay in issuing new Jim Sage allotment permits is justified under the 2015 Idaho and Southwestern Montana Greater Sage-Grouse Approved Resource Management Plan Amendment ("Sage-Grouse Plan Amendment") and other management guidance. Resp. Br. at 4 (citing Management Direction LG 2 and LG 15). But while the Sage-Grouse Plan Amendment does prioritize review and processing of expiring grazing permits in Sagebrush Focal Areas and Priority Habitat Management Areas, that prioritization scheme does not apply here, since the Jim Sage allotment is subject to this Court's Phase Two SJ Decision, which held unlawful the prior grazing decisions and permits. Thus, BLM is not operating on a blank slate, and its obligations to review and fully process new grazing authorizations on the Jim Sage allotment flows from this Court's summary judgment order and not the prioritization from BLM's subsequent guidance.

Moreover, BLM disregards the language of its own Instruction Memorandum ("IM") 2016-141 – adopted to guide implementation of 2015 sage-grouse plan amendments – which provides that BLM Field Offices must give "highest priority" to issuing grazing permits and environmental reviews needed to meet outstanding legal orders and requirements. IM 2016-141 is attached as Exhibit 1 hereto, as it was recently removed from BLM's website, and replaced with IM 2018-024, as noted by BLM.[3] IM 2018-024 apparently gives BLM Field Offices more latitude than IM 2016-141 in conducting grazing permits renewals within priority sage-grouse

---

[3] IM 2018-024 is located at https://www.blm.gov/policy/im-2018-024.

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF -- 5

habitats, but nevertheless provides: "Field Offices must give the highest priority to the work necessary to meet applicable legal requirements (e.g., court orders)." *Id.* BLM thus must heed its own guidance by moving much faster to cure the legal violations the Court adjudicated on the Jim Sage Allotment than it currently proposes.

The unreasonableness of BLM's proposed 20+ year timeline is also underscored by the adjudicated violations of the FRH regulations in the Phase Two SJ Decision. The FRH regulations were adopted to establish minimum ecological requirements that grazing must meet on BLM lands – and to require quick action when those requirements are not being met. *See W. Watersheds Project v. Kraayenbrink,* 538 F.Supp.2d 1302, 1305 (D. Idaho 2008) (BLM's 1995 rulemaking described the FRH regulations as "critical to improving rangeland conditions, especially riparian areas"), *aff'd in relevant part*, 632 F.3d 472 (9th Cir. 2011). If BLM determines that these requirements are not being met due to current grazing, the FRH regulations mandate that BLM "shall take appropriate action . . . as soon as possible but not later than the start of the next grazing year . . . to ensure" that the criteria will be met or significant progress made toward achieving them. 43 C.F.R. § 4180.1; *Idaho Watersheds Project v. Hahn*, 187 F.3d 1035 (9th Cir. 1999) (enforcing requirement that BLM must revise grazing management by next year when FRH standards are not being met). The BLM regulations further require that grazing permits include mandatory terms and conditions "that ensure compliance with subpart 4180." 43 C.F.R. § 4130.3-1.

In its Phase Two SJ Decision, the Court discussed the breadth of FRH violations on the Jim Sage allotment, noting:

> In 2003, the BLM issued an evaluation of this allotment under the Fundamentals of Rangeland Health (FRH). The BLM concluded that the allotment was in violation of 6 of the 7 applicable FRH standards, including those for riparian areas, stream channels, native plant communities, seedings, water quality, and

> wildlife habitat for sensitive species. SAR 765–770. The Idaho Department of Environmental Quality ("DEQ") reached the same conclusion: "After visiting several springs, creeks, and canyons in the Jim Sage Allotment we agree with the BLM that grazing practices have played a large rol[e] in their degradation. Stream banks were trampled and bare of vegetation, riparian plants were either absent or heavily grazed and stream channels in many areas were severely entrenched." SAR 3286.

*W. Watersheds Project v. Jewell*, 2014 WL 4853121, at *8-9 (Sept. 29, 2014). The Court further held BLM failed to take "appropriate action" to fix these violations. *Id.*

Even though the Phase Two SJ Decision was issued in September 2014 – three and a half years ago – BLM has yet to adopt new grazing decisions fixing these adjudicated violations as required under the FRH regulations. Yet BLM now seeks an additional 20+ years before it modifies livestock grazing on the Jim Sage allotment in an open and public process to adhere to these mandatory requirements. While this Court was willing before to allow BLM to make "allotment-by-allotment changes . . . in its annual grazing authorizations to align grazing with the Court's decision" during the interim timeframe before BLM issued new grazing decisions, *see* Dkt No. 171 (remedies order), it is inappropriate to allow these informal modifications to livestock grazing – modifications made without full public notice and comment – to extend out 20 or more years. *See* Rangeland Reform, Final Environmental Impact Statement, p. 143 (discussing importance of public input to grazing decisions)[4]; *Kraayenbrink, supra,* 538 F. Supp.2d at 1313-16 (same).

BLM also errs in arguing that the 2015 NDAA eliminates or alters this Court's equitable authority in remedying the adjudicated statutory violations. As explained in more detail in Western Watersheds' Opening Brief in Support of Motion for Leave to File First Supplemental Complaint (ECF No. 275-2) at 3-5, the 2015 NDAA amended Section 402(c) of FLPMA to grant

---

[4] Located at https://archive.org/details/rangelandreform25unit (last visited March 12, 2018).

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF -- 7

BLM greater discretion in scheduling NEPA analysis of grazing permit renewals. But nothing in the 2015 NDAA altered the basic FLPMA requirements governing grazing management on public lands, including that grazing permits must be consistent with governing land use plans under FLPMA Section 302(a), 43 U.S.C. § 1732(a); and the 2015 NDAA did not eliminate or revise the requirements of the FRH regulations. *Id.* The subsequent enactment of the 2015 NDAA thus does not affect the Court's equitable authority to remedy the violations of law it previously adjudicated.

### B. BLM's Proposed 25-Year Timeframe is Unreasonable.

BLM's proposed 20+ year timeframe for compliance is also patently unreasonable. In the prior Owyhee grazing litigation – where this Court held BLM similarly violated NEPA, FLPMA and the FRH regulations by in renewing 67 grazing permits across the Owyhee Field Office – the Court rejected as "unacceptable" BLM's proposed timeframe of 10 years to issue new grazing decisions and associated NEPA and FLPMA reviews. *See* Memorandum Decision and Order, *Idaho Watersheds Project v. Hahn*, No. 97-cv-519-S-BLW, Dkt. No. 239 (Feb. 29, 2000), *aff'd* 307 F. 3d 815 (9th Cir. 2002). The Court required an expedited schedule of 3 years for high priority allotments and 6 years for all other allotments, after finding that tacking more delay on an already delayed process was unreasonable. *Id.* at 3.

Here, BLM is now requesting 20 more years (on top of the 3.5 years since the Phase Two SJ remand) – *i.e.*, "late 2030s at the earliest" – to issue new grazing decisions and associated environmental reviews on the Jim Sage allotment. On its face, BLM's request is preposterous, and none of its cases furthers its cause.

In *Federal Power Commissions v. Transcontinental Gas Pipe Line Corporation*, 423 U.S. 326 (1976), the Supreme Court reversed a circuit order directing the Commission to complete

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF -- 8

additional discovery regarding the existence of a shortage of gas supply. Nothing in that case concerned the propriety of a reviewing court requiring a compliance schedule.

*National Wildlife Federation v. National Marine Fisheries Service*, 524 F.3d 917, 937 (9th Cir. 2008), does not support BLM's proposition that "a court should defer to the agency's determination of how long it will take to complete the remanded action." Resp. Br. at 6. Federal defendants there did not "challenge the court's discretionary authority to impose a deadline for the remand proceedings," as BLM now claims. *Id.* Moreover, the discrepancy in the proposed timelines for compliance between that case and this – 18 months in the context of managing the entire Federal Columbia River Power System there, versus over 20 years in managing just the Jim Sage grazing allotment here – vitiates any reasonable comparison between the two cases. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 2005 WL 1278878, p. 2 (D. Or. May 26, 2005) (noting the court put an 18-month cap on remand proceedings).

BLM string-cites a series of other cases, but the gross disparity between the much shorter remand periods in those cases versus the 20+ years BLM requests here again exposes the absurdity of BLM's proposal. *See Delta Smelt Consol. Cases*, 2011 WL 1740308 (E.D. Cal. May 4, 2011) (complete ESA consultation and full NEPA review within 30 months); *Ctr. for Biological Diversity v. BLM*, 35 F. Supp. 3d 1137, 1154 (N.D. Cal. 2014) (issue final recovery plan for imperiled plant species within 5 years); *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (allowing 3-year delay of Clean Air Act rule). In short, there is no legal support for BLM's decades-long timeframe here.

Finally, BLM's effort to understate the importance of the ecological values of the Jim Sage allotment and simultaneously exaggerate its claims of interim improvement cannot convert BLM's 20+ year delay into a reasonable period for compliance. According to BLM's own

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF -- 9

resource staff, BLM failed to collect or examine any data using the two "primary sources" for evaluating sage-grouse habitat conditions in the Jim Sage allotment in recent years – *i.e.*, the BLM Assessment, Inventory, and Monitoring Data (AIM Data), and the BLM Habitat Assessment Framework (HAF). *See* Declaration of Ethan Ellsworth, ¶ 9, ECF No. 286-5 ("No recent AIM or HAF data are available for the Jim Sage allotment"). Moreover, Ellsworth even cautions against relying on his one-paragraph analysis of sage-grouse populations, warning that the "data is insufficient to predict any long-term trends." ECF No. 286-5, ¶ 13.

In summary, this Court must not simply defer to BLM's unreasonably extended timeframe for coming into compliance with its obligations under FLPMA, NEPA and the FRH regulations for the Jim Sage allotment. Because BLM has not made any reasonable proposal, the Court should adopt Western Watersheds' proposed compliance date of March 1, 2019.

## CONCLUSION

Western Watersheds respectfully requests that the Court grant this Motion for Remedial Relief, adopt a schedule of compliance, and require BLM to issue new final grazing decisions and associated NEPA and FLPMA reviews by December 1, 2018 on the Bruneau Allotments; December 1, 2019 on the Owyhee Allotments; and March 1, 2019 for the Jim Sage allotment.

Dated this 16th day of March 2018.   Respectfully submitted,

/s/ Laird J. Lucas
Todd C. Tucci (ISB # 6526)
Laurence ("Laird") J. Lucas (ISB # 4733)
*Advocates for the West*
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
ttucci@advocateswest.org
llucas@advocateswest.org

Attorneys for Plaintiff Western Watersheds Project

REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF --                            10

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2018, I caused the foregoing REPLY BRIEF ON MOTION FOR REMEDIAL RELIEF and the accompanying EXHIBIT 1 to be electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to all counsel of record in this matter as follows:

Attorneys for Federal Defendants
Christine England
christine.england@usdoj.gov

Luke Hajek
luke.hajek@usdoj.gov

Attorneys for Intervenors J.R. Simplot Co. et al.
Paul Arrington
pla@idahowaters.com

Alan Schroeder
alan@schroederlezamiz.com

Albert Barker
apb@idahowaters.com

Attorneys for Intervenor Ellison Ranching Co.
Karen Budd-Falen
main@buddfalen.com

John Hammond
jrh@fisherpusch.com

Attorneys for Intervenors Public Lands Council et al.
Arron Bruner
aebruner@wrlegal.org

Paul Turcke
pat@msbtlaw.com

Caroline Lobdell
clobdell@wrlegal.org

Attorney for Amicus Nevada Counties
Kristin McQueary
jfisherman@elkocountynv.net

Attorney for Amicus State of Nevada
Wayne Howle
whowle@ag.nv.gov

Attorneys for Amici NW Farm Credit Services et al.
Murray Feldman
mfeldman@hollandhart.com

William Myers
wmyers@hollandhart.com

/s/ Laird J. Lucas
Laird J. Lucas