| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br>  Plaintiff,<br><br>  v.<br><br>RYAN ZINKE, Secretary, Dept. of<br>Interior, et al.,<br>  Defendants,<br><br><br>J. R. SIMPLOT CO., et al.,<br>  Intervenor-Defendants,<br><br>PUBLIC LANDS COUNCIL,<br>NATIONAL CATTLEMEN'S BEEF<br>ASSOCIATION, IDAHO CATTLE<br>ASSOCIATION,<br>  Intervenor-Defendants. | Case No. 4:08-CV-435-BLW<br><br>MEMORANDUM DECISION AND<br>ORDER |

# INTRODUCTION

The Court has before it the BLM's motion to reconsider, and WWP's motions to file a supplemental complaint and to require the BLM to issue certain decisions. The motions are fully briefed and at issue. For the reasons described below, the Court will grant the BLM's motion to reconsider, deny WWP's motion to file a supplemental complaint, and grant in part WWP's motion to require the BLM to issue certain decisions.

**<u>Motion to Reconsider</u>**

In this lawsuit, WWP challenges some 600 BLM decisions to allow grazing that allegedly failed to protect sage grouse. The parties agreed to file a series of summary judgment motions concerning specific allotments that were representative of many others. In the first round of motions, the Court found that the BLM's environmental reviews of five allotments in the Bruneau and Owyhee Field Offices were insufficient under the law. In the second round, the Court found that reviews of four other allotments within the Burley Field Office were similarly insufficient.

Specifically, in the second round, the Court granted WWP's motion for summary judgment on the following issues: (1) the Environmental Assessment (EA) evaluating the four allotments at issue violated NEPA; (2) the final grazing decisions at issue for the four allotments violated the Fundamentals of Rangeland Health (FRH) regulations; and (3) the grazing rider contained in § 325 of Public Law 108-108 tolled BLM's obligation to proceed with environmental obligations imposed by laws like NEPA, but carved out an exception for FLPMA and requires a continuing obligation to follow that statute.[1]

This last finding was crucial. The BLM's Burley Field Office had been using the grazing rider to renew grazing permits without doing any NEPA or FLPMA review in

---

[1] The Court declined to address the issue of whether BLM's management of grazing in the four allotments violated FLPMA, but stated that it would allow the issue to be raised again if the modified permits failed to abide by the applicable Range Management Plan. Finally, as it did in the first round, the Court remanded the relevant environmental reviews to BLM but declined to halt grazing while BLM made the changes required by its decision.

168 of 200 allotments since 2005, including the four allotments at issue here. The BLM argued that § 325 tolls the BLM's deadline to comply with all applicable laws, including NEPA and FLPMA, to allow the BLM to catch up on a massive backlog of environmental reviews.

The BLM asks the Court to reconsider that decision carving out an exception for FLPMA in § 325. The BLM argues that the language of § 325 tolls the time for the BLM to conduct the environmental reviews required by "all applicable laws and regulations" and hence does not carve out an exception for FLPMA.

In the Court's prior decision, it began its analysis by noting that in previous cases, the BLM had argued that § 325 completely absolved it from following NEPA and FLPMA in renewing permits. *See WWP v. Bennett,* 2008 WL 2003114 (D. Id. 2008). The Court rejected that argument, holding that nothing in § 325 allowed the BLM to ignore NEPA and FLPMA entirely. *Id.*

The BLM subsequently changed its argument from waiver to tolling, arguing that § 325 merely tolls the time for NEPA and FLPMA review by allowing that review to come after the permit is renewed. In considering this new argument, the Court found the conclusions of two district court decisions cited by the BLM – that § 325 tolled NEPA claims, among others – to be persuasive. *See WWP v. BLM,* 629 F.Supp.2d 951 (D. Ariz. 2009); *Great Old Broads for Wilderness v. Kempthorne*, 452 F.Supp.2d 71 (D.D.C. 2006). Both cases held that in § 325, Congress granted a grace period to the BLM, allowing it to renew certain expiring permits without doing the environmental reviews

required by NEPA, among other statutes. However, neither case specifically considered whether § 325 tolled the required review under FLPMA. Because § 325 states that expiring permits "shall be renewed under [FLPMA]," the Court reasoned that § 325 carved out an exception for a FLPMA review, maintaining the requirement that the FLPMA review be done before the expiring permit could be renewed. *See Memorandum Decision (Dkt. No. 265)* at p. 20.

The BLM now asks the Court to reconsider that decision, arguing, among other things, that the Court's decision was contrary to the plain language of § 325. The Court begins its analysis by examining once again the language of § 325:

> SEC. 325. A grazing permit or lease issued by the Secretary of the Interior . . . that expires, is transferred, or waived during fiscal years 2004-2008 shall be renewed under section 402 of the Federal Land Policy and Management Act of 1976, as amended (43 U.S.C. 1752) . . . The terms and conditions contained in the expired, transferred, or waived permit or lease shall continue in effect under the renewed permit or lease until such time as the Secretary of the Interior . . . completes processing of such permit or lease in compliance with all applicable laws and regulations, at which time such permit or lease may be canceled, suspended or modified, in whole or in part, to meet the requirements of such applicable laws and regulations. Nothing in this section shall be deemed to alter the statutory authority of the Secretary of the Interior or the Secretary of Agriculture . . . . Provided further, That notwithstanding section 504 of the Rescissions Act (109 Stat. 212), the Secretaries in their sole discretion determine the priority and timing for completing required environmental analysis of grazing allotments based on the environmental significance of the allotments and funding available to the Secretaries for this purpose. . . .

The key language of § 325 requires that expiring permits "shall be renewed under § 402 of [FLPMA]," and that the existing terms and conditions shall "continue in effect under the renewed permit" until BLM can complete the processing of the permits under "all applicable laws and regulations." The phrase "shall be renewed under § 402 of [FLPMA]" could, standing alone, mean either that the permit should not be renewed until its compliance with FLPMA was determined (as the Court initially interpreted it) or that the permit should be renewed even if the FLPMA review had not yet been done. The latter meaning makes the most sense upon reconsideration, and this becomes apparent by focusing on what is held in abeyance by the statute. Section 325 makes it clear that the permit's existing terms shall continue in effect until the BLM can complete the processing of the permit under "all applicable laws and regulations." That phrase is certainly broad enough to include FLPMA. *See WWP,* 629 F.Supp.2d at 969 (rejecting WWP's argument that the phrase "all applicable laws and regulations" should be read narrowly to include only NEPA and other procedural statutes). Thus, Congress was not carving out an exception for FLPMA but was in fact sweeping it into the broad category of environmental reviews that would be held in abeyance while the permits were renewed. *Great Old Broads,* 452 F.Supp.2d at 81 (holding that by the language of § 325, "Congress amended 'all applicable laws' to require reissuance of expired, transferred or waived grazing permits prior to the completion of otherwise required actions").

WWP argues that this interpretation constitutes an implied repeal of environmental statutes. It is true that "statutory repeals by implication are disfavored." *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 190 (1978). But there is no repeal here:

> Section 325 does not constitute a broad exemption from all environmental laws [but] . . . merely provides a limited grace period of validity for grazing permits that expire and must be renewed prior to the relevant environmental analysis . . . . This temporary tolling is confirmed by the fact that Section 325 specifically states that permits "may be canceled, suspended or modified . . . to meet the requirements of such applicable laws and regulations" once the processing of the permits is complete. In essence, Section 325 changes the relevant environmental analysis that applies to grazing permits from a condition precedent into a potential condition subsequent; *the analysis still has to occur, but for the time being, not prior to renewal of the permits*.

*WWP,* 629 F.Supp.2d at 970 (emphasis added). Thus, there is no repeal of environmental laws – the BLM is still required to meet the demands of NEPA, FLPMA, and the FRH regulations, but just not prior to the renewal of those permits.

For all these reasons, the Court will grant the motion to reconsider its prior ruling, *see Memorandum Decision (Dkt. No. 265),* that § 325 does not toll the time for a FLPMA review. The Court now holds that § 325 does allow the renewal of grazing permits (that expired during fiscal years 2004 to 2008) without environmental review under NEPA, FLPMA, the FRH regulations, or other applicable laws and regulations. The Court holds that the BLM is still required to meet the demands of NEPA, FLPMA, and the FRH regulations, but just not prior to the renewal of those permits.

**Motion To File Supplemental Complaint**

WWP seeks leave to file a First Supplemental Complaint to challenge the BLM's automatic renewal of grazing permits in three Field Offices under the 2015 National Defense Authorization Act (NDAA). This legal issue requires the Court to determine whether the 2015 NDAA authorizes the same sort of automatic renewal of grazing permits contained in the language of § 325 just discussed. The vast majority of the 168 grazing permits at issue in this case – many of which were renewed under § 325 some years ago – have expired and been renewed under the 2015 NDAA. Thus, it is the language of the 2015 NDAA that now governs most of the renewed grazing permits at issue.

But the proposed Supplemental Complaint does not raise only a legal issue. It also alleges that the BLM has failed to comply with the Idaho and Southwest Montana Greater Sage-grouse Plan Amendments issued in 2015. The BLM argues that WWP should "bring a new lawsuit" with these new claims, and not delay this case that is already a decade old. *See Defense Brief (Dkt. No. 285)* at p. 14.

Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The courts have generally granted motions to supplement under Rule 15(d) where a matter is still pending, and final judgment has not yet been entered. *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113 (9th Cir.1986). But this case is unique – it is now a decade old, and the Supplemental Complaint seeks to add not only a new legal claim but new substantive claims as well.

Such claims belong in a new case. WWP argues that if the Court requires filing these claims in a new case, that the case be assigned to the undersigned, and the Court will so order. The Court will also note that an important factor in its decision was that the BLM proposed the filing of these claims in a new case, as discussed above. The Court has therefore assumed that the BLM will not be challenging the new case on grounds that would not have been available had the Supplemental Complaint been allowed.

**Motion for Remedial Order**

WWP asks the Court to set a deadline of March 1, 2019, for the BLM to comply with the Court's earlier summary judgment rulings and conduct a NEPA analysis on the six grazing allotments at issue in those two decisions. WWP argues that the BLM has unduly delayed its NEPA analysis.

In response to WWP's motion, the BLM identified a schedule for completion of the NEPA analysis on these six allotments. With regard to the Battle Creek and East Castle Creek allotments, the BLM states that the NEPA analysis will be completed by the Fall of 2018. With regard to the Rockville, Silver City, and Diamond Basin allotments, the NEPA analysis will be done by the Fall of 2019. Finally, the analysis for the Jim Sage allotment will not be completed, according to the BLM, until "the late 2030s at the earliest." *See Response Brief (Dkt. No. 286) at p. 5.*

WWP is "willing to accede to BLM's timeline proposal" for the Battle Creek, East Castle Creek, Rockville, Silver City, and Diamond Basin allotments, so long as the Court

"holds BLM to its current promises by incorporating them into a court-ordered schedule for compliance." *See Reply Brief (Dkt. No. 294)* at p. 1. The Court agrees and will do so.

With regard to the remaining allotment at issue – the Jim Sage allotment – WWP argues that BLM's requested delay until the "2030s at the earliest" is too long. WWP points out that the Court found substantial violations of the FRH regulations on the Jim Sage allotment in the Court's earlier decision:

> In 2003, the BLM issued an evaluation of this allotment under the Fundamentals of Rangeland Health (FRH). The BLM concluded that the allotment was in violation of 6 of the 7 applicable FRH standards, including those for riparian areas, stream channels, native plant communities, seedings, water quality, and wildlife habitat for sensitive species. SAR 765–770. The Idaho Department of Environmental Quality ("DEQ") reached the same conclusion: "After visiting several springs, creeks, and canyons in the Jim Sage Allotment we agree with the BLM that grazing practices have played a large rol[e] in their degradation. Stream banks were trampled and bare of vegetation, riparian plants were either absent or heavily grazed and stream channels in many areas were severely entrenched."

*W. Watersheds Project v. Jewell*, 2014 WL 4853121, at *8-9 (Sept. 29, 2014). WWP argues that these past findings require much faster action.

The BLM responds that the conditions on the allotment have improved, leading the BLM to put the allotment on a lower priority list because other allotments (such as the Rockville, Battle Creek, Silver City, and East Castle Creek, discussed above) are deteriorating and require higher priority. To support this statement, the BLM provides the Declaration of Ethan Ellsworth, a BLM Wildlife Biologist, who describes data showing that the "average population size on eight leks in or near the Jim Sage allotment

increased from 2007-2009 (15.7) to 2015-2017 (19.1)." *See Ellsworth Declaration (Dkt. No. 286-5) at ¶ 13.* Ellsworth points out that while the "data is insufficient to predict any long-term trends," it does "suggest the population is increasing in areas on or near this allotment." *Id.* The BLM's Supervisory Rangeland Management Specialist, Scott Sayer, states that "riparian conditions [on the Jim Sage allotment] have continued to improve since the early 2000s due to improvements in grazing management." *See Sayer Declaration (Dkt. No. 286-6) at ¶ 12.* The percentage of vegetation that is consumed or destroyed by animals on the allotment between 2008 and 2017 "has generally averaged between 15 and 30 percent in the 28 key areas where utilization is collected." *Id.* at ¶ 8. Given these improvements, the BLM placed the Jim Sage allotment in a lower priority category, which means, according to the BLM, that the "grazing permits for the Jim Sage allotments will be fully processed sometime in the late 2030s." *See Crane Declaration (Dkt. No. 286-1) at ¶ 13.*

The "late 2030s" could well-mean the year 2038, a date twenty years in the future. Such a delay stretches to the breaking point the deference that must be given to an agency's determination of priorities and the Congressional grant of a "grace period" for an agency to comply with NEPA, FLPMA, and the FRH regulations. A delay of twenty years would seem to be far longer than any grace period Congress intended, and far outside the boundaries of deference that protect agency decisions. Nevertheless, Congress did state in § 325 that "the Secretaries in their sole discretion determine the priority and timing for completing required environmental analysis of grazing allotments

based on the environmental significance of the allotments and funding available to the Secretaries for this purpose." While this provision obviously grants broad discretion, it does not absolve the BLM from conducting the environmental reviews altogether. And the BLM's estimate of a twenty-year delay is inching very close to an outright refusal to conduct those reviews.

Given the extraordinary nature of this twenty-year delay, the Court needs to hear the justification from BLM officials at an evidentiary hearing. Therefore, with regard to the Jim Sage allotment, the Court will grant WWP's motion in part and deny it in part. The Court will deny that part of the motion that seeks to impose an immediate deadline based on the current record but will grant the motion at least to the extent that an evidentiary hearing will be held to consider the justification for estimated delay until the "late 2030s." The Court will direct counsel to contact the Court's clerk to set up an evidentiary hearing.

As stated above, the other parts of the motion will be granted: The Court will impose deadlines on the BLM for the completion of the permit processing in the Battle Creek and East Castle Creek allotments by the Fall of 2018, and in the Rockville, Silver City, and Diamond Basin allotments by the Fall of 2019.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the defendant's motion to reconsider (docket no. 277) is GRANTED. The Court now holds that § 325 does allow

the renewal of grazing permits (that expired during fiscal years 2004 to 2008) without environmental review under NEPA, FLPMA, the FRH regulations, or other applicable laws and regulations. The Court further holds that the BLM is still required to satisfy the demands of these laws and regulations, but just not prior to the renewal of those permits.

IT IS FURTHER ORDERED, that the motion for leave to file supplemental complaint (docket no. 275) is DENIED with the understanding that any new case filed with these claims will be assigned to this Court.

IT IS FURTHER ORDERED, that the motion for order (docket no. 276) is GRANTED IN PART AND DENIED IN PART. The motion is granted to the degree it seeks to impose deadlines on the BLM for the completion of the processing of permits for the Battle Creek and East Castle Creek allotments by the Fall of 2018, and for the Rockville, Silver City, and Diamond Basin allotments by the Fall of 2019. It is denied to the extent it seeks to impose a deadline, based on the current record, for permit processing in the Jim Sage allotment, but is granted to the extent it seeks to hold an evidentiary hearing to considering the justification for the BLM's estimate of a delay until the "late 2030s." Counsel are directed to contact the Court's clerk to set up that evidentiary hearing.



DATED: September 27, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge